Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KASIB JONES, | : | |
| | : | |
| Petitioner, | : | Civ. No. 10-5821(MCA) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| GREG BARTKOWSKI, et al. | : | |
| | : | |
| Respondents. | : | |
| | : | |

## I.    INTRODUCTION

Petitioner Kasib Jones brings this Petition pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence for murder and a weapons offense.  (ECF No. 1.)  For the reasons explained in this Opinion, the Court denies the Petition and also denies a certificate of appealability.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At retrial, a jury found Petitioner Kasib Jones guilty of the purposeful or knowing murder of Hafiz Hosein after a first jury could not reach a verdict on that charge.  The Appellate Division provided the following background:

> [Jones] was indicted together with codefendant Demetrius Middleton for conspiracy to commit robbery, in violation of N.J.S.A. 2C:5-2 and 2C:15-1; armed robbery of Shazam Tahir, in violation of N.J.S.A. 2C:15-1; felony murder of Shazam Tahir, in violation of N.J.S.A. 2C:11-3(a)(3); purposeful or knowing murder of Shazam Tahir, in violation of N.J.S.A. 2C:11-3(a)(1) and (2); armed robbery of Hafiz Hosein, in violation of N.J.S.A. 2C:15-1; felony murder of Hafiz Hosein, in violation of N.J.S.A. 2C:11-3(a)(3); purposeful or knowing murder of Hafiz Hosein, in violation of N.J.S.A. 2C:11-3(a)(1) and (2); unlawful possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5(b), and possession of a handgun with the purpose to use it unlawfully

against the person or property of another, in violation of N.J.S.A. 2C:39-4(a). At his first trial, defendant was acquitted of conspiracy to commit robbery, both armed robbery charges, both felony murder charges, and the charge of the purposeful and knowing murder of Shazam Tahir. However, the jury failed to reach a verdict with respect to the charge of the purposeful or knowing murder of Hafiz Hosein and the two weapons offenses. Consequently, the trial court declared a mistrial as to those charges.

The jury acquitted Middleton of the charge of the purposeful or knowing murder of Hafiz Hosein but failed to reach a verdict with respect to the charge of the purposeful or knowing murder of Shazam Tahir and the two weapons offenses.[1] Consequently, the trial court declared a mistrial as to those charges.

At the retrial on the charges with respect to which the first jury had failed to reach a verdict, [Jones] was found guilty of the purposeful or knowing murder of Hafiz Hosein and the weapons offenses, and Middleton was found guilty of the purposeful or knowing murder of Shazam Tahir and the weapons offenses. The trial court sentenced defendant to life imprisonment, with sixty-three and three-quarters years of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for murder, and a concurrent five-year term for possession of a handgun without a permit. The court merged defendant's conviction for possession of a weapon for an unlawful purpose into his conviction for murder.

*State v. Jones*, No. A-6547-05T4, 2009 WL 3430185, at *1–2 (N.J. Super. Ct. App. Div. Oct. 6, 2009).

The Court reproduces the following relevant facts[2] from the Appellate Division's opinion denying Petitioner's direct appeal:

During [the] afternoon [on September 26, 1997], Shazam Tahir and his brother, Ashmeer Tahir, obtained two kilograms of cocaine which they decided to sell. Shazam obtained a meat scale and brought it to his apartment where he lived with his wife and children;

---

[1] According to the verdict sheet, the jury also acquitted Middleton of conspiracy (with Jones) to commit second-degree robbery, both robbery charges as to Hosein and felony murder as to Hosein, but could not reach a verdict on the robbery charges or felony murder charges as to Shazam Tahir. (ECF No. 38-14 at 9-11.)

[2] Footnotes 3, 4, and 5 are <u>not</u> reproduced from the Appellate Division's Opinion and instead clarify facts in the court's factual recitation.

he intended to use the scale to show potential buyers that the cocaine weighed approximately four pounds.

According to the evidence at trial, defendant and Middleton learned that day that Shazam had cocaine. Middleton was in possession of a nine millimeter pistol, and a .38 caliber handgun. He told his cousin, Alvin Smothers, in the presence of defendant,[3] that "he knew somebody who had a lot of coke…" and asked Smothers if he "wanted to go with him to rob him." Smothers declined.

That evening, Shazam returned home shortly after 10:30 p.m. at which time he received a telephone call. According to his wife, the call was from someone named "T." After telling "T" that he would "be there," Shazam left the apartment. He returned about twenty minutes later accompanied by Ashmeer and their cousin Hafiz Hosein. Around midnight, while showing Ashmeer and Hosein the cocaine, which was kept in the kitchen, Shazam received a second call. After the call, the three men walked downstairs and waited on the porch.

A few minutes later, Middleton arrived at the premises wearing a blue jacket. He was followed by defendant, who approached Ashmeer and Hosein on the porch. Ashmeer described defendant as having gold teeth and wearing a red jacket. Middleton and Shazam went up the stairs to Shazam's apartment while defendant followed Hosein into the foyer. Hosein sat on the steps leading upstairs; defendant sat one step above him. Ashmeer stayed on the porch to act as a lookout. As he stood there, he saw a man known as "T-Rock" ride by on a bicycle, stop, and look at the porch, before riding away.

Approximately ten to fifteen minutes later, Ashmeer entered the foyer and asked defendant what was taking so long; he then returned to the porch. Seconds later Ashmeer heard a shot. Middleton ran from the apartment holding a kilogram of cocaine; as Middleton headed down the stairs, defendant pulled out his .38 caliber handgun and, as Hosein stood up, shot him in the forehead.[4] The bullet passed through Hosein's head, causing him to collapse face down on the stairs and break his neck. When Ashmeer saw Middleton exit

---

[3] In his testimony from the first trial, which was read to read to the jury at the second trial, Smothers answered yes when the prosecutor asked if Jones was "a couple of feet or a foot" away, when Smothers had "the conversation with [Middleton] about robbing an Indian construction worker of some cocaine." ECF No. 137-2, Tr. at 138:10-17.

[4] No witnesses, including Ashmeer, testified that they saw Jones pull out a gun and shoot Hosein. In their original answer, Respondents contend incorrectly that "Ashmeer actually witnessed Petitioner shoot Hosein" but provide no citation to that testimony.  (ECF No. 36, Answer at 31.)

the building he began to run; as he ran, he glanced behind him and saw Middleton chase him with an outstretched hand.

Shazam's wife, who had gone into her bedroom after hearing her husband come up the stairs, heard a loud bang. She left her room and went into her daughter's room, when she heard a second bang. She looked out the window and saw two men running from her apartment building. She was unable to see the men's faces, but observed one man wearing a blue jacket and the other wearing a red jacket; the second man was carrying something in his hand. She then returned to the kitchen where she found her husband shot in the head, lying on the floor in a pool of blood.

Once Ashmeer had safely fled, he called the police from a nearby gas station. Shazam's wife also called the police. Upon arrival, the police found both Shazam and Hosein dead from close-range gunshot wounds to their heads.

In the kitchen in Shazam's apartment the police found a kilogram of cocaine, and an empty Winchester nine millimeter shell casing. They also recovered, from the downstairs wall, the .38 caliber bullet which passed through Hosein's head. The scale was found on the floor by Shazam's body.

Although Ashmeer was initially reluctant to describe what happened, he ultimately described Middleton and defendant in detail and identified their pictures. Ashmeer claimed at trial that he recognized the man in the blue jacket from having played basketball with him several times two years earlier and from seeing him in his aunt's neighborhood. Ashmeer picked out photographs of both Middleton and defendant.

Ashmeer admitted that he initially lied about what happened because he was afraid of going to jail for his part in the drug transaction. Ashmeer was never charged in connection with the drug transaction or the shooting.

On September 30, 1997, defendant was arrested at his aunt's home; a nine millimeter Black Talon bullet was found on the sofa; cocaine was found on the dresser; a red coat and defendant' gold teeth caps were also found in the home. Middletown was arrested two days later. Neither Middleton nor defendant had a permit to carry a firearm.

The chief medical examiner testified that Shazam died from a single gunshot wound to the head, which had been inflicted at close range, as evidence by gunpowder residue around the gunshot entry wound. She removed a nine millimeter Black Talon bullet from his head. She also testified that Hosein died from a gunshot wound to the head. There was testimony by a police officer that the nine

millimeter bullet recovered from Shazam and the .38 caliber bullet found near Hosein could not have been fired from the same weapon.

At trial, codefendant Middleton testified that both he and defendant were at Shazam's apartment on the night of the murder, but only to buy cocaine. He said they ran when the shooting started.[5]

Defendant did not take the stand or present any witnesses in his defense.

(ECF No. 38-6, Exhibit 24, *State v. Jones*, No. A-6896-99 (Jan. 10, 2003) at 2-6.)

On appeal, the Appellate Division affirmed Petitioner's convictions in an unreported opinion. (*Id.*) It also affirmed his sentence, except that it vacated the period of parole ineligibility imposed under NERA and remanded for entry of an amended judgment of conviction that included the thirty-year period of parole ineligibility mandated by N.J.S.A. 2C:11-3b.[6] The record suggests that Petitioner's judgment of conviction was amended on January 13, 2003, three days after the Appellate Division's decision. (ECF No. 38-7, Exhibit 25, Amended JOC.) The Supreme Court denied defendant's petition for certification on June 4, 2003. (ECF No. 38-12.)

Petitioner contends that he submitted his PCR for filing on or about July 2, 2003, but the application is stamped received on March 15, 2005.[7] (ECF No. 9 at 6-7, PCR Petition.) On June 28, 2006, the trial court (the same judge who tried the case) denied Petitioner's PCR petition. The Appellate Division affirmed the denial of Petitioner's PCR in an unpublished opinion. *Jones*, 2009

---

[5] Middleton did not testify that he and Jones ("they") ran when the shooting started. Rather, Middleton testified that Middleton (and Ashmeer) ran when the shooting started but that Jones was no longer on the porch when the shooting started because had gone to check on his vehicle, at Middleton's suggestion, after a car alarm sounded. (*See* ECF No. 37-9, Tr at 101:15-23; 102:10-25.)

[6] The Appellate Division also affirmed Middleton's convictions and sentence, except for the parole ineligibility period imposed under NERA, *State v. Middleton*, No. A-4239-99 (Nov. 29, 2001), and the Supreme Court also denied his petition for certification. 171 N.J. 337 (2002).

[7] The Court considers this discrepancy and the timeliness of the Petition in Section II.

WL 3430185, at *1–2.  The Supreme Court denied certification on May 7, 2010.  *State v. Jones*, 202 N.J. 44 (2010).

Petitioner's habeas petition was docketed on November 8, 2010 and is dated October 29, 2010.  (ECF No. 1.)  The Petition raises seven grounds for relief, some of which have subparts.  (*Id.*)

The District Court initially ordered a limited answer on timeliness.  After the parties briefed the issue of timeliness and provided evidence, the matter was transferred to the undersigned.  (ECF No. 34.)  The Court reserved on timeliness and ordered Respondents to file their full answer.  (ECF No. 35.)

Respondents filed their answer (ECF Nos. 37-38) but did not include the transcripts of Petitioner's first trial, which were a necessary part of the record with respect to Ground One of the Petition.  Petitioner filed a traverse.  (ECF No. 43-44.)  Upon review, the Court ordered Respondents to supplement the record with the transcripts from Petitioner's first trial.  (ECF Nos. 45-49.)  Petitioner subsequently filed a motion for counsel, which the Court granted for the purpose of assisting the Court in obtaining the transcripts.  (ECF Nos. 52, 55.)  Respondents eventually produced the transcripts for Petitioner's first trial.  (ECF Nos. 58-61.)

Respondents and Petitioner's habeas counsel proposed a new briefing schedule, to which the Court agreed.  (ECF No. 66-67.)  Petitioner's habeas counsel supplemented his arguments (ECF No. 68), Respondents filed a response (ECF No. 71-72), and Petitioner's counsel filed a reply.  (ECF No. 72.)

The Court reopened the matter (ECF No. 75), and having considered the record and the parties arguments, now issues its decision.

## II.    **TIMELINESS**

The Court briefly addresses timeliness.  "The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that '[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.'" *Massey v. Superintendent Coal Township SCI*, 2021 WL 2910930, at *2 (3d Cir. 2021) (quoting 28 U.S.C. § 2244(d)(1)).  AEDPA's statute of limitations is nonjurisdictional and subject to equitable tolling in appropriate cases.  *Id.* (citing *Holland v. Florida*, 560 U.S. 631, 645 (2010).

Generally, a petitioner is entitled to equitable tolling if he can show that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  The diligence required for equitable tolling purposes is "reasonable diligence," not maximum, extreme, or exceptional diligence.  *Holland*, 560 U.S. at 653.  A petitioner's exercise of reasonable diligence is a subjective determination based on the facts and circumstances of each individual case.  *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013).

With respect to lost or misdirected mail, "[c]ourts are typically only willing to equitably toll the filing deadline when there is sufficient evidence that in fact the petitioner did timely mail his filing, thus making the claim of 'lost mail' substantially more believable."  *Johnson v. U.S.*, No. 10-CV-341, 2010 WL 2490694, at *3 (E.D. Wis. June 17, 2010).  Courts have granted equitable tolling where a prisoner provides evidence that he that he submitted the filing at issue to prison officials on time and diligently followed up when it was not received.  *See, e.g., Washington v. Ollison*, No. C 06-4490, 2007 WL 1378013, at *3 n.3 (N.D. Cal. May 9, 2007) (prisoner presented several forms of evidence substantiating his claim that he had in fact mailed his petition on time); *Chapman v. Ricks*, No. 9:03-CV-0171, 2008 WL 820189, at *8 (N.D.N.Y. Mar. 26,2008)

(equitably tolling the habeas time period for 153 days, and finding his petition timely); *see also Massey*, 2021 WL 2910930, at *3 (holding in a case involving "lost mail" submitted by the petitioner's attorney that "the narrow factual circumstances presented . . . constitute[d] extraordinary circumstances that warrant equitable tolling").

The Court has reviewed the relevant submissions and finds that Petitioner has met his burden to show that he submitted his PCR petition to prison officials for filing in July 2003, that his petition was thereafter lost, and that he followed up in a reasonably diligent manner given his incarceration. Petitioner has provided a certification, along with postage remits, averring that the Prison Business Office mailed his PCR petition on July 16, 2003. He further certified that he mailed his PCR petition and appendix a second time on March 10, 2004, and a third time on March 8, 2005. (ECF Nos. 17, 17-1.) Although Respondents raise timeliness as a defense in their full answer, Respondents earlier stated that they "are unable to further respond or dispute the Petitioner's certified claim as to the date of his initial filing of the post-conviction relief 'petition.'" (ECF No. 32 at 3.) Respondents have not provided any contrary evidence or raised credibility issues.

Here, in view of the uncontroverted evidence submitted by Petitioner, the Court finds that Petitioner is entitled to equitable tolling for the period between July 16, 2003, when his PCR was mailed by prison officials and March 15, 2005, the date on which the PCR Petition was stamped received by the state court. The later-filed PCR was accepted by the state court as timely filed under state rules, and, thus, Petitioner is entitled to statutory tolling from March 15, 2025 through the conclusion of his PCR proceedings. The Court finds the Petition timely and addresses the merits below.

### III.    STANDARD OF REVIEW

An application for writ of habeas corpus by a person challenging a state court judgment may only be granted based on violations of the Constitution or laws or treaties of the United States. *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254).  Under 28 U.S.C. § 2254(d), federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision."  *Id.* (citations omitted).  A federal habeas court making an unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 409 (2000).  Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411; *accord Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir. 2011).  Furthermore, a state court's factual findings are presumed correct, and a petitioner can rebut them only by clear and convincing evidence.  28 U.S.C. § 2254(e); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden

of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196

(3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

In determining whether a state court decision was based on an unreasonable determination

of the facts:

> federal court review considers only whether the state court
> adjudication "resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).
> The statute directs the federal court to presume that all
> determinations of fact made by the state court are correct and
> requires that the petitioner present "clear and convincing evidence"
> to rebut this presumption.

*Hunterson v. DiSabato*, 308 F.3d 236, 245–46 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1);

*Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002)).  This is a "difficult" test to

meet and is a "highly deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181

(2011).

The relevant state court decision for federal habeas corpus review is the last reasoned state

court decision.  *Wilson v. Sellers*, 584 U.S. 122, 125 (2018); *Bond v. Beard*, 539 F.3d 256, 289-90

(3d Cir. 2008).  Furthermore, "[w]here there has been one reasoned state judgment rejecting a

federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest

upon the same ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson*, 584 U.S.

at 125.  These deferential standards apply "even where there has been a summary denial" by the

state court.  *Cullen*, 563 U.S. at 187.

Finally, where a petitioner's constitutional claims are unexhausted and/or procedurally

defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2).  *See*

*Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's]

claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

IV.    **ANALYSIS**

a.    **Ineffective Assistance of Trial and Appellate Counsel for Failing to Challenge the Robbery Evidence and Motive Instruction on the Basis of Collateral Estoppel (Grounds One and Six)**

At Petitioner's retrial for the purposeful and knowing murder of Hosein and a related weapons offense, the State introduced evidence that Petitioner and Middleton killed each victim to steal a kilo of cocaine. Petitioner argues that the collateral estoppel prong of the Double Jeopardy Clause barred State from introducing this motive evidence of robbery or theft because the first jury acquitted Petitioner of all robbery offenses. In Ground One of the Petition, Petitioner thus argues that his attorney was deficient for failing to (a) move to exclude that evidence on the grounds of Double Jeopardy and collateral estoppel and (b) object to the Court's limiting instruction, which told the jury that robbery/theft was the motive for committing the murder. (Petition at 15-19.) In Ground Six of the Petition, Petitioner also alleges that his assigned appellate counsel was ineffective for overlooking and/or failing "to raise the claim that the evidence of the acquitted offenses was barred under the principles of double jeopardy and collateral estoppel." (*Id.* at 27-28.)

Petitioner attempted to raise similar claims in a supplemental petition for certification on direct appeal. (*See* ECF No. 38-11, Exhibit 29.) In that filing, Petitioner argued that his counsel was ineffective for failing to challenge the admission of robbery evidence, including Smother's testimony, on the basis of double jeopardy and collateral estoppel. (*Id.* at 9-12.) He also claimed that the trial court committed plain error when it instructed the jury that the state claimed that the

motive for the murder was to obtain cocaine without paying for it and that his counsel should have objected to that instruction. (*Id.* at 14-15.) There is no indication that the New Jersey Supreme Court addressed these issues on direct review.

On appeal of the denial of his PCR, Petitioner argued that his trial attorney was deficient for failing to argue that robbery evidence should have been excluded under *Ashe v. Swenson*, 397 U.S. 436 (1970), and for failing to challenge the motive instruction given by the trial court.[8] (*See* ECF No. 38-13.) With respect to the latter claim, Petitioner's PCR appellate counsel and habeas counsel also argues that trial counsel was ineffective for failing to argue that the admission of the robbery evidence violated *State v. Cofield*, 127 N.J. 328, 334 (1992). Petitioner also asserts that appellate counsel on direct appeal was deficient for failing to raise meritorious issues and for failing to seek remand to permit him to raise the collateral estoppel issue. (*Id.*)

A claim of ineffective assistance of counsel under the Sixth Amendment requires two showings: objectively deficient performance by counsel and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner bears the burden of establishing that counsel's performance prejudiced the defense. *Marshall v. Hendricks*, 307 F.3d 36, 89 (3d Cir. 2002). The court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. *See Strickland*, 466 U.S. at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008).

The first *Strickland* prong requires a petitioner to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). This prong requires a petitioner to show that counsel made errors "so serious" that counsel was not functioning as the counsel

---

[8] Petitioner did not rely on *Ashe* in his trial-level PCR brief, but his appellate PCR attorney criticized his PCR attorney's presentation of the issues (ECF Nos. 38-14, 38-13), and the Appellate Division did not bar his claims for failing to raise them below.

guaranteed under the Sixth Amendment. *Strickland*, 466 U.S. at 687. A petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" measured "under prevailing professional norms." *Id.* at 688. "There is a 'strong presumption' that counsel's performance was reasonable," *see Jermyn*, 266 F.3d at 282 (quoting *Strickland*, 466 U.S. at 688), and, under AEDPA, federal courts must be "doubly deferential" when evaluating *Strickland* claims under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Accordingly, in order to provide relief where a state court has rejected a *Strickland* claim, the district court must find that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Petitioner's ineffective assistance claims in Ground One are premised in part on violations of the collateral estoppel prong of the Double Jeopardy Clause. The Double Jeopardy Clause "embodies two vitally important interests." *Yeager v. United States*, 557 U.S. 110, 117 (2009). The first is the principle that the state is not permitted to make repeated attempts to convict an individual for the same offense. *Id.* at 117–18. "The second interest is the preservation of the finality of judgments." *Id.* at 118 (internal quotation marks omitted). The second principle, referred to as the collateral-estoppel component of the Double Jeopardy Clause, "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Id.* at 119. This is because "when an issue of ultimate fact has once been determined by a valid and final judgment" of acquittal, "that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. In his PCR appeal, Petitioner argued that his case falls within the rule announced in *Ashe* and that his attorney was ineffective for failing to

challenge the admission of the robbery evidence on that basis, thus permitting the state to relitigate the robbery at the second trial, which prejudiced him at trial.

In *Ashe*, six poker players were robbed by a group of masked men, and Ashe was charged with—and acquitted of—robbing Donald Knight, one of the six players. The State retried Ashe for the robbery of another poker player only weeks after the first jury had acquitted him, and the second prosecution was successful. *Id.* at 439-440. The Supreme Court concluded that that "the jury's verdict of acquittal collaterally estopped the State from trying him for robbing a different player during the same criminal episode." *Yeager*, 557 U.S. at 119–20 (citing *id.* at 446). In a criminal case, *Ashe* holds that "when an issue of ultimate fact has once been determined by a valid and final judgment [of acquittal], that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe*, 397 U.S. at 443. As explained by the *Ashe* Court:

> After the first jury had acquitted the petitioner of robbing Knight, Missouri could certainly not have brought him to trial again upon that charge. Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the petitioner was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of Knight in the hope that a different jury might find that evidence more convincing. The situation is constitutionally no different here, even though the second trial related to another victim of the same robbery. For the name of the victim, in the circumstances of this case, had no bearing whatever upon the issue of whether the petitioner was one of the robbers.

*Id.* at 446.

The Supreme Court has applied the *Ashe* standard in subsequent decisions. *See Harris v. Washington*, 404 U.S. 55, 55 (1971) (holding that retrial of petitioner for assault and murder after his acquittal of the murder of different victim present during the bombing was barred because it "would require relitigation of the same ultimate fact determined adversely to the State in the previous trial—i.e., whether it was the petitioner who had mailed the bomb"); *Turner v. Arkansas*,

407 U.S. 366, 369 (1972) (holding that collateral estoppel barred the petitioner's retrial for robbery after acquittal for the murder of the same victim during the same incident where the jury was instructed that it must find petitioner guilty of first-degree murder if it found that he had killed the victim either with premeditation or unintentionally during the course of a robbery).

Subsequently, in *Dowling v. United States*, 493 U.S. 342, 348 (1990), the Supreme Court expressly "decline[d] to extend *Ashe* and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to the alleged criminal conduct for which a defendant has been acquitted."  In *Dowling*, 493 U.S. at 344, the defendant was tried for various offenses arising out of a bank robbery, during which the defendant wore a ski mask and carried a small gun.  *Id.*  During the bank-robbery trial, the prosecutor introduced evidence from a woman, Vena Henry, who claimed she had been robbed by the defendant and another man, Delroy Christian, two weeks after the bank robbery.  *Id.* at 344-45.  Henry testified that, during the robbery of her house, the defendant was wearing a similar ski mask and carrying a similar gun as the perpetrator in the bank-robbery case.  *Id.*  During the course of the robbery of her house, Henry unmasked the defendant, allowing her to identify him.  *Id.*  At the time of the bank-robbery trial, the defendant already had been acquitted of robbing Henry.  *Id.* at 345.  The government nevertheless sought to introduce the Henry's testimony to show the similarity in the offenses and the connection between the defendant and Christian, who had been seen with the defendant shortly before the bank robbery.  *Id.*  The trial court specifically instructed the jury that the defendant had been found not guilty of the robbery of the Henry and emphasized the limited purpose for which the testimony was offered.  *Id.* at 346.

The Supreme Court recognized the continuing viability of the *Ashe* standard, but it nevertheless concluded that admission of Henry's testimony at Dowling's bank robbery trial was not barred by collateral estoppel. *Id.* at 349. As the Court explained, "Ashe's acquittal in the first trial foreclosed the second trial because, in the circumstances of that case, the acquittal verdict could only have meant that the jury was unable to conclude beyond a reasonable doubt that the defendant was one of the bandits. A second prosecution was impermissible because, to have convicted the defendant in the second trial, the second jury had to have reached a directly contrary conclusion. *Dowling*, 493 U.S. at 347–48 (citing *Ashe*, 397 U.S. at 445). Although Dowling likened his situation to the petitioner in *Ashe*, the Court disagreed and found that "unlike the situation in *Ashe v. Swenson*, the prior acquittal did not determine an ultimate issue in the present case," a point Dowling conceded. *Id.* at 348. In reaching its decision, the *Dowling* Court assumed that there was reasonable doubt as to whether Dowling was the masked man that entered Henry's home, but to introduce evidence on this issue under Fed. R. Civ. P. 404(b) at the bank robbery trial, the prosecution did not need to prove this fact beyond a reasonable doubt. The Court found that collateral estoppel "is inapposite" where the jury could reasonably find that Dowling was the masked man who entered Henry's home under a lower standard of proof. *Id.* at 349.

The Court alternatively found that even if the collateral-estoppel doctrine applied in the circumstances of Dowling's case, Henry's testimony was admissible in the bank robbery trial because Dowling failed to prove that the jury in the first trial based the acquittal on the fact that Dowling was not present in Henry's house (even if he did not commit the robbery). The Court cited to evidence that, at the first trial, Dowling had not disputed Henry's identification; instead, he claimed that he had not committed robbery because he and Christian "merely came to retrieve . . . money from an individual in the house." *Id.* at 351 (internal quotations omitted). The *Dowling*

Court also rejected Dowling's argument that the admission of Henry's testimony was fundamentally unfair and violated the Due Process Clause finding that "[e]specially in light of the limiting instructions provided by the trial judge, we cannot hold that the introduction of Henry's testimony merits this kind of condemnation." *Id.* at 353.

In this case, the Appellate Division relied on *Dowling* and rejected Petitioner ineffective assistance claims based on collateral estoppel as follows:

> The only argument that warrants discussion, which is presented under Points I and IV of defendant's brief, is that his trial and appellate counsel were ineffective in failing to argue that evidence that his motive in committing the murder was the theft of drugs should have been excluded at the retrial under the Double Jeopardy Clauses of the United States and New Jersey Constitutions and principles of collateral estoppel because defendant was acquitted of both armed robbery and felony murder charges at his first trial.
>
> Defendant's argument is similar to the argument rejected by the Supreme Court of the United States in *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L. Ed.2d 708 (1990). In *Dowling*, the defendant was charged with attempted robbery and other offenses for a home invasion during which the victim ripped off the mask of the intruder, who she identified as the defendant. *Id.* at 344-45, 110 S.Ct. at 670, 107 L. Ed.2d at 715. However, the defendant was acquitted of the charges based on the home invasion. *Id.* at 345, 110 S.Ct. at 670, 107 L. Ed.2d at 715. Despite this acquittal, the government introduced evidence of defendant's commission of this home invasion in his subsequent trial for a bank robbery. *Id.* at 344-45, 110 S.Ct. at 670, 107 L. Ed.2d at 715. This evidence was elicited for two purposes: first, to strengthen the government's identification of the defendant as the bank robber, because the perpetrator of that offense wore a mask and carried a gun that were similar to the mask and gun used by the perpetrator of the home invasion; and second, to link the defendant with another person who the victim identified as the second perpetrator of the home invasion, who the police found in a car parked in front of the bank that the government theorized the defendant had intended to use as a getaway car. *Id.* at 345, 110 S.Ct. at 670, 107 L. Ed.2d at 715-16.
>
> On appeal from his conviction for the bank robbery, the defendant argued that the admission of evidence of his alleged commission of the home invasion attempted robbery violated the doctrine of collateral estoppel incorporated in the Double Jeopardy Clause of the Fifth Amendment because he was acquitted of the charges based

on that crime. *Id.* at 347-48, 110 S.Ct. at 671-72, 107 L. Ed.2d at 717. In rejecting this argument, the Court stated: [W]e decline to extend . . . the collateral estoppel component of the Double Jeopardy Clause to exclude in all circumstances . . . relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted. For present purposes, we assume for the sake of argument that Dowling's acquittal established that there was a reasonable doubt as to whether Dowling was the masked man who entered Vena Henry's home with Delroy Christian two weeks after the First Pennsylvania Bank robbery. But to introduce evidence on this point at the bank robbery trial, the Government did not have to demonstrate that Dowling was the man who entered the home beyond a reasonable doubt: the Government sought to introduce Henry's testimony under Rule 404(b), and, ..."[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Because a jury might reasonably conclude that Dowling was the masked man who entered Henry's home, even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the first trial, the collateral-estoppel component of the Double Jeopardy Clause is inapposite.[*Id.* at 348-49, 110 S.Ct. at 672, 107 L. Ed.2d at 717-18 (citation omitted) (footnote omitted).]

The same reasoning as in *Dowling* compels rejection of defendant's argument that evidence that his intent in entering the Tahir apartment was to steal drugs should have been excluded because he was acquitted of the conspiracy to commit robbery, armed robbery and felony murder charges in his first trial. The jury's verdict in the first trial only showed that there was reasonable doubt whether the State had proven all of the elements of the offenses of which defendant was acquitted. That verdict did not establish that defendant was not one of the persons who entered the Tahir apartment and shot Shazam Tahir and Hafiz Hosein. In fact, the jury's failure to reach a verdict on the charges that defendant purposefully or knowingly murdered Hafiz Hosein and that Middleton purposefully or knowingly murdered Shazam Tahir shows that the first jury was unable to decide that issue.[9] Therefore, as in *Dowling*, the jury in the second trial could still reasonably

---

[9] On June 18, 2009, several months prior to the Appellate Division decision, the Supreme Court decided *Yeager* and held that "consideration of hung counts has no place in the issue-preclusion analysis." 557 U.S. at 122. A court should exclude hung counts, when the jury is unable to reach a verdict, from its analysis. *See Yeager*, 557 U.S. at 121–22 ("To ascribe meaning to a hung count would" be "guesswork," and not "reasoned analysis.") Therefore, this Court disregards the Appellate Division's reliance on the hung count and focuses on their remaining reasons for denying relief.

conclude that defendant had entered the Tahir apartment and that his motive for murdering Hafiz Hosein was to steal drugs.

Moreover, evidence that Shazam Tahir and his brother Ashmeer Tahir were engaged in the sale of cocaine from Shazam Tahir's apartment and that the killers gained entry to the Tahir apartment by posing as prospective purchasers was essential in proving the murder charges against defendant and Middleton. Consequently, if the State had been required to sanitize its proofs in a manner that excluded all evidence that defendant and Middleton came to the Tahir apartment in order to steal drugs, the State's presentation of its proofs would have been severely circumscribed. We conclude for the reasons previously stated that the Double Jeopardy Clauses of the United States and State Constitutions and principles of collateral estoppel did not compel such a restriction on the State's proofs. Therefore, defendant's counsel at his retrial and on the direct appeal were not ineffective in failing to raise this argument.

Defendant's other arguments are clearly without merit. R. 2:11-3(e)(2).

*Jones*, 2009 WL 3430185, at *3–5.

The Appellate Division read *Dowling* to hold broadly that acquittal evidence may be admitted in a second trial where it is relevant and admissible under a lower standard of proof and is not an "ultimate issue" in the second trial.[10]  The Appellate Division also stressed that the jury in the first trial acquitted Petitioner of the robbery-related offenses because the state did not meet its burden of proof,[11] and those acquittals did not establish that Petitioner was not present at the

---

[10] Notably, in *Dowling*, the Supreme Court did not limit its holding to the use of acquittal evidence in unrelated trials or find it inapplicable to cases involving the same criminal episode.  Indeed, Justice Brennan dissented from the majority in *Dowling*, joined by Justices Marshall and Stephens, on that basis: "the Court's reasoning appears to extend even further than the facts of this case and seems to allow a prosecutor to rely on a prior criminal offense (despite an acquittal) as evidence in a trial for an offense which is part of the *same transaction* as the prior offense." *Dowling*, 493 U.S. 363 (emphasis in original).

[11] *Ashe* instructs that Courts must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 U.S. at 444 (citation omitted).  That examination "must be set in a practical frame and viewed with an eye to all the *circumstances* of the proceedings." *Id.* (quoting *Sealfon v. United States*, 332 U.S. 575, 579 (1948)).  It is unclear whether the Appellate Division reviewed the record of the first trial to determine what the jury necessarily decided, as

Tahir apartment/stairwell, as did the acquittal in *Ashe*. Petitioner, however, did not seek to foreclose prosecutors from presenting evidence about identity, and his trial counsel conceded he was at the Tahir apartment. Instead, Petitioner argued that the jury should be foreclosed from considering evidence that <u>his motive</u> for being at the Tahir apartment and for murdering Hosein was to steal drugs.

The Appellate Division did not unreasonably apply *Dowling* in concluding that collateral estoppel does not apply where the acquittal evidence is relevant and admissible in the second trial under a lower standard of proof and where the factual issue decided in the first trial is not an "ultimate issue" in the second trial.[12] The Supreme Court has described this principle as *Dowling's*

---

required by *Ashe*. Because Respondents did not provide the transcripts of the first trial, the Court ordered Respondents to provide them and has reviewed them for that purpose. At the first trial, the evidence that Petitioner was part of a plan to rob Tahir of cocaine and/or participated in that robbery was far from overwhelming. Alvin Smothers testified that Jones was standing approximately a foot away when Middleton told Smothers about his plan to rob cocaine from an Indian construction worker. (ECF No. 61-2 at 32-33, 57.) Other evidence potentially linking Petitioner to the one kilogram of cocaine allegedly taken from Tahir's home was the 3.6 grams of cocaine that was found in Petitioner's room at the time of his arrest. (ECF No. 61-3 at 46-47 (Minovich-Cross-Jerejian) (thirty vials recovered), 74 (Smith-Direct) (one vial weighs .12 grams).) The state, however, presented no evidence that the cocaine found in Jones' room came from Tahir's home. The prosecutor also called Jamal Turner, who testified that someone driving a green jeep gave Middleton a black bag a few days after the murder, and that Jones was in the passenger seat. (ECF No. 59-2 at 48, 72-75, 79, 83 (Turner-Direct.) Turner claimed, however, that he was coerced into giving that statement. (*Id.* at 76-79, 83-84.)

[12] With respect to the weapons offense, the trial judge instructed the jury that Petitioner's "unlawful purpose" was to either steal drugs <u>or</u> shoot Hosein:

> In this case, the State contends that the defendant's unlawful purpose in possessing the firearm was to use it to obtain without payment drugs and/or to shoot Mr. Tahir and Mr. Hosein.

(ECF No. 37-13, Tr. 41:3-6.) Thus the instruction permitted the jury to find as an element or means that Petitioner's "unlawful purpose" in possessing the weapon was to steal drugs, crimes for which he had been acquitted, potentially violating the rule in *Dowling*. Petitioner does not appear to challenge his attorney's failure to object to this aspect of the instruction on the weapon offense, and this error is harmless for purpose of habeas review because the jury also found him guilty of murder, i.e., shooting Hosein, and it did not affect Petitioner's sentence, as the trial court

"primary ruling." *See U.S. v. Felix*, 503 U.S. 378, 386 (1992) ("The primary ruling of [*Dowling*] was our conclusion that the collateral-estoppel component of the Double Jeopardy Clause offered Dowling no protection despite his earlier acquittal, because the relevance of evidence offered under Rule 404(b) was governed by a lower standard of proof than that required for a conviction) (citing *Dowling*, 493 U.S., at 348–349).

Here, the state did not need to prove that robbery was Petitioner's motive for murdering Hosein beyond a reasonable doubt (or at all) to convict him of knowing and purposeful murder. Under New Jersey law, motive is "relevant to the issue of intent" but "is not an essential element of the crime of murder." *State v. Cherry*, 289 N.J. Super. 503, 529 (N.J. Super. App. Div. 1995) (citing *State v. Beard*, 16 N.J. 50, 60–61, 106 A.2d 265 (1954)); *see also State v. Apprendi*, 304 N.J. Super. 147, 157–58 (N.J. Super. App. Div. 1997) ("[m]otive is not an essential element of any crime, unless made so by statute.") (citing 21 Am.Jur.2d Criminal Law § 173 (1981).  Instead, the purpose of motive is "to aid the jury, particularly in a case resting upon circumstantial evidence, in determining who the person was who committed the crime." *State v. Carter*, 91 N.J. 86, 102 (1982).

Consistent with this rule, the trial judge first instructed the jury on the elements of purposeful or knowing murder.  (ECF No. 37:13, Tr. at 29:4-30:25.)  The trial court then instructed the jury on motive as follows:

> Although the State must prove that the defendants acted either purposely or knowingly, the State is not required to prove a motive.
>
> If the State has proved the essential elements of the offense beyond a reasonable doubt, the defendants must be found guilty regardless of the defendant's motive or lack of motive.

---

did not impose a consecutive sentence for this offense and merged Petitioner's conviction for possession of a weapon for an unlawful purpose into his conviction for murder.

> If the State, however, has proved a motive, you may consider that insofar as it gives meaning to other circumstances.
>
> On the other hand, you may consider the absence of a motive in weighing whether or not the defendants are guilty of the crimes charged.

(*Id.* at 31:1-13.)

Here, the robbery evidence was admitted to provide a motive for the murder and explain why Petitioner and Middleton were at the Tahir apartment, which were not "ultimate" issues in Petitioner's murder trial; therefore, the admission of this evidence did not violate principles of collateral estoppel. In turn, the Appellate Division did not unreasonably apply *Strickland* in finding that Petitioner's trial counsel was not deficient for failing to seek to exclude the robbery evidence under *Ashe*, as this request would have been denied in light of *Dowling*. Similarly, Petitioner's appellate counsel on direct appeal was not deficient for failing to raise this issue on appeal as either a direct or ineffective assistance claim, as it would not have succeeded. The Court denies relief on this claim.

Petitioner also argued below that his attorney was ineffective for failing to challenge the admission of uncharged crimes in the second trial and object to the motive instruction.[13] (ECF No. 38-13, Pet. PCR Appellate Br.) That jury instruction read as follows:

> The State has also introduced evidence that the Defendant, Kasib Jones, possessed a controlled dangerous weapon when he was arrested. Normally such evidence is not permitted under our rules of evidence. This is because our rules of evidence specifically exclude evidence that a defendant has committed an un-charged crime when

---

[13] After Jamal Turner's testimony was read to the jury in the second trial, Court also gave a limiting instruction telling the jury that it could not consider that testimony to show defendants' propensity to commit crimes and that it "was admitted as it may bear on the issue of motive." (ECF No. 37-5, Tr. 173:7-175:9.)

it is admitted only to prove that he has a disposition or tendency to do wrong, and therefore must be guilty of the charged offense.

However, our rules do permit evidence of uncharged crimes or wrongs or acts when the evidence is used for some other purpose. In this case, the evidence, if you choose to believe it, has been introduced only for a specific narrow purpose.

The State alleges that the evidence shows the defendant's motive, that is the reason why the defendant committed the crime he is charged with.

The State alleges that the motive here was to obtain cocaine without paying for it, Whether this evidence does in fact support the purpose for which the state offered it is for you as jurors to decide. You may decide that the evidence does not support the State's purpose and isn't helpful to you at all. In that case you should disregard the evidence.

On the other hand, you may decide that the evidence does support the purpose for which the State offered it and use it for that specific purpose.

However, you may not use this evidence to decide that the defendant has a tendency to commit crime, or that he is a bad person, that is, you may not decide that just because the defendant has committed an uncharged crime, wrong or act, that he must be guilty of the present offenses.

I have admitted the evidence only to help you decide the specific question of motive. You may not consider it for any other purpose, and may not find the defendant guilty simply because the State has offered this evidence that he has committed an uncharged crime.

(ECF No. 37-13, Tr. at 21:20-23:7.) At trial, Sgt. Minovich testified that officers found "3 clips of cocaine" on Petitioner's dresser when he was arrested. The Court gave a limiting instruction immediately following this testimony, informing the jury that the cocaine evidence could not be used to show that Petitioner had a predisposition to commit a crime or a predisposition to commit the crime charged, and that it could be used only to "show motive or intent or an absence of mistake and can be used for no other purpose." (*See id.* at ECF No. 37-1, 45:21-46:17; *see also* 47:1-14.)

Petitioner's appellate PCR counsel argued that trial counsel failed to object to the jury instruction, despite the fact that Jones had been acquitted of the robbery offenses and the charge

referred to a "controlled dangerous weapon" after the trial judge in the first trial ruled that the shotgun found in Jones' room was not admissible. (ECF No. 38-13, Pet. PCR Appellate Brief at 29-30.) PCR appellate counsel further argued that admission of robbery evidence violated Petitioner's right to due process[14] and should not have been admitted as other crimes evidence under N.J.R.E. 404(b) because petitioner was acquitted, and that the drugs and gun evidence was improperly used as part of the "res gestae" to circumvent the principles of collateral estoppel. (ECF No. 38-13, Pet. PCR Appellate Brief at 41-51.) Appellate PCR counsel further argued that the prosecution, with the acquiescence of Petitioner's defense counsel, was allowed to saturate the jury with evidence of "theft." (*Id.* at 42.) She further argued that the weapon and drugs found in Petitioner's apartment were not relevant and that counsel should have argued against their admission under *State v. Cofield*, 127 N.J. 328, 337-38 (1992). (*Id.* at 49.)

In the limiting instruction, the trial court presumably meant to refer to "controlled dangerous substance," i.e., the cocaine found in Petitioner's room at the time of his arrest, but the instruction referred to a "controlled dangerous weapon." Petitioner cannot show he was prejudiced by his counsel's failure to correct to this error, as the jury only heard testimony about drugs found on Petitioner's dresser and did not hear evidence about the shotgun found in petitioner's room. As such, the jury would not have believed based on this fleeting instruction that a weapon was found on Petitioner at the time of his arrest. Moreover, had Petitioner's trial counsel corrected this

---

[14] The Supreme Court rejected *Dowling's* due process claim based on the repeated limiting instructions given by the trial court, which informed the jury that Dowling was acquitted of the Henry home invasion and that the Rule 404(b) testimony could only be used for a limited purpose. In Petitioner's trial, the jury was not informed that Petitioner was acquitted of the robbery offenses and all references to the prior trial were omitted and replaced with "hearing" or "proceeding." (*See e.g.*, ECF No. 37-1, Tr. 144:12-14 ("No one is allowed to testify that we had a trial before, just that you testified at a previous hearing.").) In his PCR appellate brief, however, Petitioner did not rely on the due process analysis in *Dowling*.

isolated mistake, it might have called undue attention to the possibility that a weapon had been

found.  "Sometimes, silence is the right call to avoid 'high-lighting' fleeting prejudicial material."

*Rosa v. Attorney General of New Jersey*, 141 F.4th 477, 484 (3d Cir. 2025) (citing *Buehl v. Vaughn*,

166 F.3d 163, 170 (3d Cir. 1999)).  That is the case here.

     The Court also finds that the Appellate Division did not unreasonably apply *Strickland* in

rejecting Petitioner's claim that his trial counsel should have objected to the limiting instruction,

which told the jury that the state introduced this evidence to show that the motive for the murder

was to obtain drugs without paying for them, as this evidence was relevant and admissible for a

limited purpose despite Petitioner's acquittal on the robbery offenses.

     In his supplemental habeas brief, Petitioner also focuses on the admission of Smothers'

testimony.  There was no limiting instruction provided to the jury in connection with this testimony

and Petitioner's counsel did not request such an instruction.  At the time of Petitioner's trial,

however, the prevailing law, as stated in *State v. Cherry*, 289 N.J. Super. at 522, recognized that

"[e]vidence of events that take place during the same time frame as the crime charged in the

indictment will not be excluded if the evidence establishes the context of the criminal event,

explains the nature of, or presents the full picture of the crime to the jury."  *Id.*  In *Cherry*, the

defendant challenged the admission of witness testimony at his murder trial that he had been at a

bar with the defendant and a codefendant and the three men had discussed robbing the bar on the

day of the murder.  The State offered the conspiracy evidence in order to place defendant at the

scene of the shooting and assist the jury on the "issue of identity."  *Id.* at 522.  The defendant

argued that the evidence was "inadmissible 'other crimes' evidence, and, if admissible, required a

limiting instruction" but the Appellate Division disagreed, finding that

          Evid. R. 55, now, N.J.R.E. 404(b), does not apply when the "other
          crimes" evidence is part of the total criminal conduct that occurred

during the incident in question and may be considered within the res gestae of the charged crime. *State v. Ortiz*, 253 N.J. Super. 239, 243, 601 A.2d 735 (App. Div.), *certif. denied*, 130 N.J. 6, 611 A.2d 646 (1992). Nor does the Rule apply to uncharged acts of misconduct that are components of the subject matter crime. *State v. Martini*, 131 N.J. 176, 241, 619 A.2d 1208 (1993), post conviction relief denied, 139 N.J. 3, 651 A.2d 949 (1994), cert. denied, —— U.S. 203, 116 S.Ct. 203, 133 L.Ed.2d 137 (1995). Evidence of events that take place during the same time frame as the crime charged in the indictment will not be excluded if the evidence establishes the context of the criminal event, explains the nature of, or presents the full picture of the crime to the jury. *State v. Louf*, 64 N.J. 172, 178, 313 A.2d 793 (1973). A jury "cannot be expected to make its decision in a void—without knowledge of the time, place and circumstances of the acts which form the basis of the charge." *United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980). Because the evidence was not "other crimes" evidence, the requirement that a limiting instruction be given when "other crimes" evidence is used is inapplicable. Therefore, the trial judge did not err in admitting the evidence, nor in failing to instruct the jury as to its limited relevance.

*Id.* at 522; *see also State v. Tucker*, 2012 WL 1382223, at *4 (N.J. Super. App. Div. 2012) ("Given the state of the law at the time, we discern no deficiency in appellate counsel's performance" in failing to object to defendants' use and purchase of drugs the day after his mother's death, which was admitted as res gestae).

It was not until 2011 that the New Jersey Supreme Court rejected "the practice of invoking 'res gestae' as an explanation for the admission of evidence" of other crimes or bad acts, *see State v. Rose*, 206 N.J. 141, 182 (2011), and required such evidence to be analyzed under the New Jersey Rules of Evidence. By 2016, the New Jersey Supreme Court in *State v. J.M., Jr.*, 225 N.J. 146, 162 (2016) noted that "the fact that a defendant was acquitted of the prior crime will often weigh heavily against a finding that the evidence of that crime is "clear and convincing" under *Cofield*. *Id.* at 162 (citing *Cofield, supra*, 127 N.J. at 338). The New Jersey Supreme Court further stated in a footnote that ["i]n the limited circumstances in which acquitted-act evidence is admissible, a

defendant should have the option to request that the trial court inform the jury that a jury had acquitted the defendant of that charge." *Id.* at 163 n.2.

But Petitioner's trial and appellate counsel were not ineffective for failing to anticipate *Rose* and later cases because the state law precedent at the time permitted such evidence as not barred by N.J.R.E. 404(b) if the defendant's conduct was "res gestae," or "part and parcel" of the criminal event, *Martini*, 131 N.J. at 240–42, and there was no requirement to tell the jury that the defendant had been acquitted of any crime with respect to that evidence. *See, e.g., Sistrunk v. Vaughn*, 96 F.3d 666, 672 (3d Cir. 1996) (holding that defense counsel's failure to predict the Supreme Court's decision in *Batson v. Kentucky*, 471 U.S. 1052 (1985) did not constitute ineffective assistance); *see also U.S. v. Doe*, 810 F.3d at 154 ("failing to predict a change in the law is not deficient performance"); *United States v. Stubbs*, 757 F. App'x 159, 161–62 (3d Cir. 2018) (where trial counsel's "failure to object was consistent with the law at the time of trial," "an attorney cannot be deficient for failing to predict changes in the law"); *Snider v. United States*, 908 F.3d 183, 192 (6th Cir. 2018) ("We have repeatedly held that counsel is not ineffective for failing to predict developments in the law, unless they were clearly foreshadowed by existing decisions.").

For these reasons, Petitioner's claim that his counsel was ineffective for failing to challenge the limiting instruction and related claims fail on habeas review and the Court denies relief on this aspect of Ground One.

### b. Prosecutor's Remarks in Summation (Ground Two)

In Ground Two of the Petition, Petitioner brings a claim for prosecutorial misconduct in connection with the prosecutor's remarks in summation. Petitioner raised these claims on direct appeal. In summation, the prosecutor offered the following example of circumstantial evidence:

> Let me show you an example of circumstantial evidence. I am showing you S-1Z in evidence. It's an investigator holding a tape

measure to the kitchen door, on the inside of the kitchen door you see a little red handprint, a little red handprint.

Nobody saw how that handprint got on the door, but you know how it got on the door, you know why this little bloody handprint is on the door.

It's because after the shooting and Nazeema screaming she starting down the stairs to get somebody to call for help, the little daughter comes into the kitchen, nobody saw her come into the kitchen, but somehow she did, she sees daddy sleeping on the floor, she goes to daddy sleeping on the floor, tries to wake him up, she touches him with her hand, she gets blood on her hand, and at some point she goes to the kitchen door and she touches it.

Nobody saw it happen. Nobody saw it happen. You know that's what happened. How do you know? Because  of  circumstantial evidence.

No eyewitness but circumstantial evidence.

(ECF No. 37-12, Tr. 123:7-124:2.)  Middleton's counsel objected to this portion of the summation as speculative, and at sidebar, Petitioner's counsel joined the objection, arguing that "[t]he prosecutor is offering it to play up to the sympathy of the jury the little girl's daddy, it's as plain as day." (*Id.* at 123:4-6.)  Petitioner's trial counsel further stated: "I object.  It was improper." (*Id.* at 126:21.)

In response, the trial court instructed the jury that the example the prosecutor "was offered by him for the purpose of illustrating what he feels circumstantial evidence and for no other purpose." (*Id.* at 126:3-127:5.)  The Court stated that it would explain circumstantial evidence in the jury charge and the jury was free to determine whether or not it was a good example. (*Id.*)

The prosecutor also stated that "[t]he defendants in this case assassinated Shazam Tahir and Hafiz Hosein, physically took their lives, and then one of them, Demetrius Middleton, testified and attempts to assassinate their character.  Character assassination.  Kills them physically—[.]" Petitioner's counsel objected to this characterization, but the trial court found that the jury would hear the law and decide what took place. (*Id.* at 130:2-16.)

The prosecutor also told the jury "[w]ho cares whether Ashmeer remembers actually seeing the second guy coming out, but he probably did, because he told the police that he did" and asked the jury "why would he lie about that." (*Id.* at 164:3-9.) Petitioner's counsel repeatedly objected on the grounds that Ashmeer admitted that he didn't tell the truth and that he did not see two people come out the door, but the Court stated it was for the jury to recollect whether the prosecutor's interpretation was correct. (*Id.* at 164:15-165:17.) Petitioner's counsel objected again to the prosecutor's statement that Ashmeer "says he thinks he made a mistake when he said he saw two guys coming out, and I suggest to you he wasn't mistaken when he said that . . . ." (*Id.* at 166:2-9.) Petitioner's counsel objected again when the prosecutor implied that another witness may have seen two people chasing Ashmeer. (*Id.* at 170:2-3.) After a sidebar, the trial court instructed the jury that it did not recall "anyone saying that there was more than one person chasing Mr. Ashmeer Tahir on foot. Two different people, different identifications, but both of one person on foot. If your recollection coincides with mine, there is no basis for an inference that there were two people chasing him on foot." (*Id.* at 176:19-177:1.)

The prosecutor's remarks do not meet the high bar for prosecutorial misconduct. The Supreme Court has held that federal habeas relief may be granted when the "prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The Court further opined that for due process to have been offended, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Id.* (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976))). A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of

the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001); *see also Werts v. Vaughn*, 228 F.3d 178, 198 (3d Cir. 2000) ("In evaluating whether the remarks of the prosecutor [in summation] rise to the level of a constitutional violation, we are required to examine those remarks in the context of the whole trial.").

The Appellate Division found that none of the comments made by the prosecutor in summation were "sufficiently egregious to warrant a new trial."  (ECF No. 38-6 at 9.)  The Court agrees that the prosecutor's comments, even if improper and/or inconsistent with the evidence, were not severe enough to deny Petitioner a fair trial, especially in light of counsel's objections and the Court's instructions, clarifying to the jury that the handprint comments could only be considered as an example of circumstantial evidence and explicitly instructing the jury that there was no record evidence showing that a second person (i.e., Petitioner) was also chasing Ashmeer. The Court denies relief on this claim.

### c.  Failure to Charge the Jury on Lesser-Included Offenses (Ground Three)

In Ground Three of the Petition, Petitioner alleges that the trial court's failure to charge the jury on aggravated and reckless manslaughter deprived him a fair trial and amounts to an unreasonable application of federal law and an unreasonable determination of the facts.

From the outset, whether to charge a lesser-included offense is a matter of state and not federal law.  "[F]or a conviction of knowing murder, the prosecution must prove that the defendant knew that his or her conduct was practically certain to cause death and that such conduct caused the death of another.  *State v. Cruz*, 163 N.J. 403, 417 (2000) (citing N.J.S.A. 2C:11–3a(2)).  "A lower degree of culpability is required to prove aggravated manslaughter, for which the prosecution must show that the defendant was aware of and consciously disregarded a substantial

risk of death, i.e., a probability that death would result, and that the defendant manifested extreme indifference to human life." *Id.* (citing N.J.S.A. 2C:11–4(a)). The difference between aggravated manslaughter and reckless manslaughter is in the degree of risk that death will result from the defendant's actions—a mere possibility (reckless manslaughter) or a probability (aggravated manslaughter). *State v. Curtis*, 195 N.J. Super. 354, 364 (1984).

Petitioner's trial counsel asked the trial court to charge aggravated manslaughter; although counsel conceded that Petitioner denied he was in the stairwell, he argued that the jury should be allowed to consider what may have occurred in the stairwell and that Petitioner may have panicked after hearing the first shot. (ECF No. 37-11, Tr. at 184:3-186:8.) The trial court noted that the case was circumstantial with no testimony about what occurred on the third floor or in the stairwell. (*Id.* at 187:2-9.) In deciding not to charge the jury with aggravated manslaughter, the trial court relied on *State v. Mendez*, 252 N.J. Super 155, 159–60 (N.J. Super. App. Div. 1991) (finding that "a court should not submit a lesser included offense which invites the jury to engage in sheer speculation").[15] (ECF No. 37-12, Tr. at 3:5-4:6 (explaining that providing the charge "would encourage the jury to speculate").

After the verdict, Petitioner argued that the trial court's failure to charge lesser included offenses of aggravated and reckless manslaughter warranted a new trial; the court rejected this argument, finding that charging the lesser-included offenses would be speculative where the

---

[15] In *Mendez*, witnesses gave conflicting testimony about the identity of the shooter, but the testimony showed that the shooter fired a machine gun into a crowd. *Mendez*, 252 N.J. Super at 161. The Appellate Division found that "absent some form of mental derangement, of which no evidence was presented, a person firing a machine gun into a crowd necessarily would be aware that it is practically certain his conduct will cause death" and thus no rational basis for charging the lesser-included offense of reckless manslaughter. *Id.* at 162. Because the jury was charged with aggravated manslaughter but found the defendant guilty of murder, the Appellate Division also found any error to be harmless. *Id.* at 163.

evidence did not imply "anything other than in effect an execution of each of the victims." (*See* ECF No. 37-14, Tr. at 3:4-4:15; 8:25-11:11.)

On direct appeal, Petitioner argued that the jury could have believed that he panicked and shot the victim and that failing to charge the lesser-included offenses denied him the right to a fair trial. The Appellate Division considered and rejected this claim without comment. (*See* ECF No. 38-6 at 7.) The Appellate Division did not unreasonably apply clearly established federal law or unreasonably determine the facts in rejecting this claim.

Petitioner's claim relies on alleged violations of state law, and the Supreme Court has never recognized that an individual has a due process right to jury instructions on lesser-included offenses in non-capital cases. *See, e.g., Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("[o]utside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error"); *Beck v. Alabama*, 447 U.S. 625, 627 (1980) (holding it unconstitutional to impose a sentence of death "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense"). Moreover, this claim appears to fail under state law. Even acknowledging that no one witnessed Petitioner shoot Hosein, Petitioner has not pointed to any evidence to suggest that he acted recklessly (rather than purposefully or knowingly) in shooting Hosein. Indeed, Petitioner maintained that he was not in the stairwell at the time of the shooting, which contradicts any claim that he recklessly shot Hosein. For these reasons, the Appellate Division did not violate clearly established federal law in affirming the trial court's refusal to charge aggravated and reckless manslaughter, and the Court denies relief on this claim.

**d.  Verdict was Against the Weight of the Evidence (Ground Four)**

In Ground Four of the Petition, Petitioner asserts that the verdict was against the weight of the evidence and violates clearly established federal law and amounts to an unreasonable

determination of the facts.  On direct appeal, Petitioner argued that his conviction was based on the uncorroborated testimony of two witnesses, Ashmeer Tahir and Smothers, each of whom admitted to lying.  (ECF No. 38--4 at 25.)  The Appellate denied this claim without comment.

When the state first tried Petitioner, "nearly the same evidence produced a hung jury, a telltale sign that the case was close." *Rosa*, 141 F.4th at 486 (citing *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017)).  Nevertheless, it is exceedingly difficult to prevail on a habeas claim based on sufficiency of the evidence.  The standard for a sufficiency of the evidence claim is set out in *Jackson v. Virginia*, 443 U.S. 307 (1979).  "Under *Jackson*, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Travillion v. Superintendent Rockview SCI*, 982 F.3d 896, 903 (3d Cir. 2020) (citing *Jackson*, 443 U.S. at 319); *see also Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)).  A convicted habeas petitioner is entitled to relief if the state court's adjudication denying the insufficient evidence claim was objectively unreasonable.  *See Parker v. Matthews*, 567 U.S. 37, 43 (2012).

At issue is whether any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt.  In *Travillion v. Superintendent Rockview SCI*, 982 F.3d at 903, for example, the only evidence linking the petitioner to a robbery was the fingerprint evidence on a Manila folder and paper and the fact that his characteristics were, "at best, close enough to the witness' description of the robber not to exclude him."  The Third Circuit held that there was insufficient evidence "for a rational trier of fact to place [the petitioner] at the scene of the crime at the time the crime was committed beyond a reasonable doubt." *Id.* at 904.

Here, the case against Petitioner was based on circumstantial evidence but largely hinged on whether the jury believed the testimony of Ashmeer Tahir.  Although he had credibility issues,

Ashmeer positively identified Petitioner (ECF No. 36-6, Tr. at 78:7-7:12) and placed him at the scene at the time of the murder.[16] Ashmeer testified he was in close proximity to Petitioner for 15 minutes on the porch prior to the shooting. (ECF No. 36-6, Tr. at 65:6-13.) He further testified that Hosein went inside the foyer and sat on the steps, that Petitioner followed, and that Hosein sat one step below Petitioner. (*Id.* at 67:10-68:15.) Ashmeer testified that when he opened the door to the porch 10 to 15 minutes later and asked "the guy in red" what was taking so long, Hosein was still seated one step below Petitioner. (*Id.* at 68:23-69:7.) Ashmeer testified that he returned to the porch and less than a minute later he heard a faint gunshot followed by a much louder gunshot. (*Id.* at 70:19-71:10.)

According to the medical examiner, the bullet passed through the left side of Hosein's forehead at a downward angle, causing him to collapse face down, breaking his neck. (ECF No. 37-1, Tr. 79:3-81:17). The doctor indicated that the direction of the close range gunshot wound was consistent with someone standing behind the victim higher up and firing the weapon within 10 to 12 inches of the victim's face. (*Id.* at 81:18-82:16). And although Ashmeer did not see Petitioner flee after the shooting, Shazam Tahir's wife testified that she looked at the window after the shooting and observed two men leaving the scene—one wearing a blue jacket and the other wearing a red jacket. (ECF No. 36-5, Tr. at 106:24-108:9.)

Viewed in the light most favorable to the prosecution, a rational trier of fact could find that Petitioner purposely or knowingly murdered Hosein, and, therefore, the Court denies relief on the sufficiency of the evidence claim. The Court also denies relief on the ineffective assistance claim in Ground Five for failing to make a motion based on insufficiency of the evidence.

---

[16] As noted earlier, Respondents incorrectly state that "Ashmeer actually witnessed Petitioner shoot Hosein." (ECF No. 36, Answer at 31.) The Court does not credit this statement in resolving the sufficiency of the evidence claim.

**e. Additional Ineffective Assistance Claims (Ground Five)**

In Ground Five of the Petition, Petitioner alleges multiple grounds of ineffective assistance, each of which were rejected without comment by the Appellate Division. (*See* ECF No. 38-16, Appellate PCR Opinion at 6, 10 (rejecting arguments under N.J. Ct. R. 2:11-3).) As explained above, *Strickland* is clearly established federal law, so on habeas review, the district court must decide whether it was applied unreasonably. *See Williams v. Superintendent Greene SCI*, 112 F.4th 155, 167 (3d Cir. 2024).

Petitioner relies on his appellate PCR brief for his claim that his trial counsel was ineffective for failing to request a severance. (ECF No. 1 at 24.) Petitioner argued that "it was incumbent upon the defense counsel to request a motion for Severance and[/]or request a Mistrial when the facts clearly indicated that there was significant evidence of guilt as to the co-defendant that was being transferred by association to Jones." (ECF No. 38-13 at 56.) Appellate PCR counsel relied on *State v. Sanchez*, 143 N.J. 273, 282 (1996) and *State v. Brown*, 112 N.J. 555, 605 (1990) to argue that the codefendants had antagonistic defenses. (*See id.*) *Sanchez* dealt with "[e]valuating severance motions that are based on the need for a codefendant's testimony," 143 N.J. at 290 (holding that when the codefendants' proffered testimony is likely to be significantly exculpatory, denying the defendant's severance motion could be highly prejudicial to the defendant, and potentially could lead to the conviction of an innocent person), which was not at issue in Petitioner's trial, as Middleton trial testimony supported that Petitioner had gone to his car was not at the house when the shooting started. In *Brown*, the New Jersey Supreme Court acknowledged the preference for a joint trial when "much of the same evidence is needed to prosecute each defendant[.]" *State v. Brown*, 118 N.J. 595, 605 (1990) (citing *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). However, "[c]ourts have generally held that defendants cannot

be tried together fairly when their defenses are antagonistic and mutually exclusive or irreconcilable." *Id.* at 605.  The test for granting severance is "rigorous" and "[s]eparate trials are required only when defendants "present defenses that are antagonistic at their core." *Id.* at 605-06 (citing *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir.1981)).  And "[t]he mere existence of hostility, conflict, or antagonism between defendants is not enough.  *Id.*  That is, [i]f the jury can return a verdict against one or both defendants by believing neither, or believing portions of both, or, indeed, believing both completely, the defenses are not mutually exclusive." *Id.* (explaining that "although defendants' versions were in conflict, their defenses did not compel the jury to believe one defendant at the expense of the other in order to reach a verdict").

Here, the defenses of Jones and Middleton were not antagonistic or mutually exclusive, as Middleton testified that he was on the porch at the time of the shooting and was waiting his turn to see Shazam Tahir and that Jones had already left the porch prior to the start of the shooting. Although the jury could believe that Jones or Middleton shot Hosein, that conflict alone does not make their defenses mutually exclusive.  Therefore, trial counsel was not ineffective for failing to move for severance based on the need for Middleton's exculpatory testimony or due to mutually exclusive defenses.

Petitioner next argues that his attorney was ineffective for failing to seek a flight instruction molded to his defense theory that he was in a vehicle prior to Middleton and Ashmeer Tahir, who were running from the scene.  Petitioner relies on his PCR appellate brief for this claim.  (ECF No. 1 at 24.)  The flight charge stated the following:

> You have heard testimony from which you might infer that the defendants fled shortly after the alleged commission of the crime. The defendants deny flight.
>
> Whether the defendants fled after the commission of the crime is a fact for your determination. Mere departure from a place where a crime has been committed does not constitute flight.

>Flight may be considered as evidence of consciousness of guilt only if you decide that the defendant's purpose in leaving was to evade accusation or arrest for the offenses charged in the indictment.
>
>Thus if you find that the defendants took refuge in flight to evade the accusation or arrest on the charges in the indictment, you may consider such flight in connection with all the other evidence as an indication or proof of consciousness of guilt.
>
>You heard testimony from which you may infer that the defendants fled shortly after the alleged commission of the crime.
>
>The defense has indicated that the defendants fled after hearing shots to avoid being shot themselves.
>
>If after a consideration of all the evidence, you find that the defendants took refuge in flight to evade the accusation or arrest on those charges, you may consider such flight in connection with all other evidence in the case as an indication or proof of consciousness of guilt.

(ECF No. 37-13 Tr. at 28:13-20.) The charge accurately reflected Middleton's testimony that he fled after hearing shots to avoid being shot. Middleton also testified that Jones was no longer on the porch at the time of the shooting. And Petitioner's trial counsel emphasized in his opening and closing that Ashmeer did not see Jones exit the house and the timing made it impossible for Jones to pick Middleton up in his vehicle if Jones was fleeing after Middleton. In light of these facts, counsel was not ineffective for failing to ask for a tailored instruction to this effect and the lack of such instruction did not prejudice Petitioner, given the clear testimony of Middleton and the emphasis on this issue in counsel's opening and closing.

Petitioner also argued that his trial counsel was ineffective for failing to request a "false in one, false in all charge" with respect to the testimony of Smothers and Ashmeer Tahir. That charge permits the jury to disregard some or all testimony of a witness if the jury believes that the witness willfully gave false testimony about a material fact in the case. In his PCR appeal, Petitioner argued that the charge should have been molded to show that Ashmeer lied and that Petitioner was not chasing him. (ECF No. 38-13, PCR Appellate Br. at 64.)

The trial court gave an extensive instruction on witness credibility (ECF No. 37-13, Tr. at 15:3-17:9.)  At the conclusion of this charge, the trial court gave a version of the "false in one, false in all charge."  The trial court stated the following:

> If you believe that any witness deliberately lied to you about any fact significant to your decision, you have the right to reject all the witness' testimony, however, in your discretion you may believe some testimony and not believe other parts of the testimony.

(*Id.* at 17:5-9.)  During summation, Petitioner's trial counsel also referred to the maxim.  And after the jury instructions were complete, Middleton's trial counsel directly asked the trial court, "did you say false in one, false in all", and the trial court replied, "Yes." (ECF No. 37-13 Tr. at 3-5.)  The Court finds that under these circumstances, Petitioner's trial counsel was not ineffective for failing to request a different or molded version[17] of the false in one, false in all charge and that the failure to do so did not have a reasonable probability of affecting the outcome of the case.

Petitioner next argued that his counsel was ineffective for failing to ask for an instruction after the jury had the following question during deliberations:  "Is it possible we can find out whether their coats or clothing were tested for any blood."  (*Id.* at 55:24-25.)  Petitioner claims that the trial court instructed the jury to disregard the prosecution's failure when he responded: "The answer to the question is no, it is not possible, there is no testimony.  There is no evidence about whether or not they were tested or they weren't tested.  Therefore, we can't tell you.  Okay." (*Id.* at 54:1-4.)  Petitioner argues that the jury should have been instructed that their memory of the evidence controlled and that missing evidence could be considered as to whether the state met its burden of proof.  The Court disagrees that Petitioner's counsel was ineffective for failing to ask the trial court to instruct the jury on the impact of the missing evidence on the burden of proof or

---

[17] The trial court would not have given a molded charge saying that Ashmeer lied about seeing Petitioner come out the door, as it was the jury's job to determine whether to believe Ashmeer's testimony about why he changed his story.

that the trial court was obligated to do anything else than tell the jury that there was no evidence on this issue.  The Court denies relief on this claim.

Petitioner next argues that his attorney failed to provide a meaningful assessment of credibility, which denied him the right to confront witnesses in violation of *Crawford v. Washington*, 541 U.S. 36 (2004.)   Petitioner relies on his arguments in his PCR appellate brief. (ECF No. 1 at 25.)

This claim involves the testimony of Alvin Smothers, who testified at Petitioner's first trial but refused to testify at the second trial.  His testimony from the first trial was read to the jury with certain exceptions not relevant here.   In his PCR appellate brief, Petitioner argued that the admission of Smother's prior statements violated *Crawford v. Washington*, 541 U.S. 36 (2004), which held that "[t]estimonial statements of witnesses absent from trial" are admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness]."  *Id.* at 59.

From the outset, *Crawford* was decided after Petitioner's direct appeal concluded in 2003 and is not retroactive on collateral review.  *See Whorton v. Bockting*, 549 U.S. 406, 409 (2007) Petitioner's counsel was not deficient for failing to anticipate *Crawford*.  *See United States v. Doe*, 810 F.3d at 154 ("[F]ailing to predict a change in the law is not deficient performance").  This claim, however, is also meritless, as Smother's testimony at the first trial was elicited under oath and Petitioner's counsel had the opportunity to cross examine him, and that testimony, including trial counsel's cross examination, was read to the jury.

Trial counsel was not otherwise ineffective for failing to object to the admission of Smother's testimony.  Under state law, N.J.R.E. 803(a)(1) allows admission of a prior inconsistent statement as substantive evidence, but a hearing is required under *State v. Gross*, 121 N.J. 1, 17

(1990), which occurred in this case. Smothers' testimony from the first trial was also admissible under N.J.R.E. 804(b)(1)(A), which authorizes the admission of an unavailable declarant's testimony from a prior proceeding if the testimony (i) was given by a witness at a prior trial of the same or a different matter, or in a hearing or deposition taken in compliance with law in the same or another proceeding; and (ii) is now offered against a party who had an opportunity and similar motive in the prior trial, hearing or deposition to develop the testimony by examination or cross-examination. *See State v. Sims*, 250 N.J. 189, 219 (2022). N.J.R.E. 804(b)(1)(A) requires that the witness who gave the prior testimony be "unavailable," as defined by N.J.R.E. 804(a). A declarant who "persists in refusing to testify concerning the subject matter of the statement despite an order of the court to do so" is deemed "unavailable" to testify at trial. N.J.R.E. 804(a)(2); *see also* Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 804(a) (2022) ("A declarant is 'unavailable' under N.J.R.E. 804(a)(2) if they refuse to testify despite a court order to do so."). Rule 804(b)(1)(A) also requires that the party against whom the prior testimony is offered had an "opportunity" in the prior trial, hearing, or deposition "to develop the testimony by examination or cross-examination." Here, Petitioner's trial counsel agreed that he could not oppose the reading in of Smothers' testimony because it fell within the rules of evidence, given that Smothers had refused to testify and counsel had "a fair opportunity to cross examine him at the earlier proceeding." (*See* ECF No. 37-2, Tr. 87:4-10.)

In his PCR appeal, Petitioner also argued that the jury had no way to assess the credibility of Smothers because trial counsel did not cross-examine Smothers in front of the jury at the second trial, and the trial court failed to provide sufficient guidance to the jury on how to assess Smothers' credibility. Petitioner's trial counsel was not ineffective for failing to seek to cross-examine Smothers about his testimony that he lied to investigators, as cross examining an unpredictable

witness may have done more harm than good.  Instead, trial counsel emphasized in summation Smothers' testimony that he lied (ECF No. 37-12, Tr. 79:17-80:3), a much safer option.  Moreover, the trial court instructed the jury that they may consider Smother (and Turner's) testimony only if they found it credible and reliable.  (ECF No. 37-13, Tr. 19:25-20:13.)

For all these reasons, the Court denies relief on Petitioner's claim that his counsel was ineffective for failing to challenge the admission of Smother's testimony.

Petitioner also contends that his trial counsel was ineffective for failing to present a defense consistent with the medical evidence.  Petitioner relies on his PCR appellate brief for this claim.  There, he argued that the State's theory of the case was that Petitioner rushed in and shot the victim at the bottom of the stairs.  (ECF No. 38-13 at 71.)  This contention is without merit.  As explained earlier, Ashmeer testified that Petitioner went into the foyer with Hosein before the shooting and was positioned on the step above Hosein prior to any shots ringing out.  And, according to the medical examiner, the bullet passed through the left side of Hosein's forehead at a downward angle, causing him to collapse face down, breaking his neck.  (ECF No. 37-1, Tr. 79:3-81:17). The doctor indicated that the direction of the close range gunshot wound was consistent with someone standing behind the victim higher up and firing the weapon within 10 to 12 inches of the victim's face (5T81-18 to 82-16).  The medical examiner further testified that Hosein's cause of death was a gunshot wound to the head.  (*Id.* at 85:21-86:8.)  Counsel was not ineffective for failing to offer a defense to a theory of the shooting the prosecution did not press, and the Court denies relief on this claim.

Petitioner also argues that his counsel was ineffective for failing to ask for an accomplice liability charge, pursuant to N.J.S.A. 2C:2–6, because his defense was based on the theory that he was merely a "lookout."  Petitioner made this argument in his PCR appellate brief.  (ECF No. 38-

13 at 75-76.)  "The obligation to provide the jury with instructions regarding accomplice liability arises only in situations where the evidence will support a conviction based on the theory that a defendant acted as an accomplice."  *State v. Crumb*, 307 N.J. Super. 204, 221 (App. Div. 1997), certif. denied, 153 N.J. 215 (1998).  A defendant is not entitled to an accomplice liability instruction where the State prosecutes him as the principal and the defendant argues that he did not commit the crime at all.  *Id.* at 221–22.  In *State v. Bielkiewicz*, 267 N.J. Super. 520 (App. Div. 1993), two co-defendants were found guilty of murder after a victim was killed by one gunshot wound to the chest.  *Id.* at 525–26.  Because witnesses could not definitively identify which defendant fired the fatal shot, the state's theory was the one defendant was guilty of murder as the principal and the other was guilty as an accomplice.  *Id.* at 526.  The Appellate Division determined that, based on the state's theory of the case, the judge was obligated to "provide the jury with accurate and understandable instructions regarding accomplice liability for murder." *Id.* at 527. The Appellate Division reversed defendants' convictions because the judge failed to charge on accomplice liability. *Id.* at 536.

Here, in contrast, there were two separate victims killed with different guns.  And in the first trial, Petitioner was acquitted of felony-murder and purposeful or knowing murder of Shazam Tahir and Middleton was acquitted of the purposeful or knowing murder of Hosein.  And the state's theory of the case was that Petitioner was liable as a principal in the murder of Hosein and Middleton was liable as a principal in the murder of Tahir.  The defense theory that Petitioner was akin to a lookout did not implicate him as an accomplice to murder; instead, the defense maintained that Petitioner may have acted as Middleton's lookout during the drug purchase but was not

involved the murder of Hosein and was not even there when the shots rang out. Under these circumstances, counsel was not ineffective for failing to seek an accomplice liability charge.[18]

Finally, counsel was not ineffective for failing to argue against the appearance of prosecution witnesses in prison garb and shackles. In 2003, the New Jersey Supreme Court held that "[g]oing forward . . . defense witnesses [may] no longer appear at trial in prison garb because that practice advances no essential state interest." *State v. Artwell*, 177 N.J. 526, 530 (2003). In *State v. Kuchera*, 198 N.J. 482, 486 (2009), the held that *Artwell's* reasoning with regard to the physical restraint of witnesses extended to witnesses for the State, but the Court did not extend *Artwell's* per se ban on prison garb because "the reasons that animate our decision in *Artwell*— that is, that the wearing of prison garb may tend to undermine the credibility of the witness—may have no true relevance to prosecution witnesses. . . ." *Id.* Instead, the Court held that trial courts should presumptively require civilian clothing for all witnesses, but that this presumption may give way to other concerns in the trial court's discretion. *Id.* at 500–01. In *State v. Dock*, 205 N.J. 237 (2011), the Court declined to afford *Artwell* full retroactivity, holding "*Artwell's* limited prohibition on the use of restraints on defense witnesses—and, by extension, under *Kuchera*, *supra*, on any witnesses in a criminal trial—is to have prospective effect." *Id.* at 258–59.

Here, Petitioner's counsel was not ineffective for failing to anticipate *Artwell* or *Kuchera*. Moreover, Petitioner cannot show prejudice as Smothers' appearance in handcuffs and prison garb

---

[18] To the extent Petitioner argued below (and here) that the trial court should have charged the jury on accomplice liability sua sponte and that the circumstances of the case required a special interrogatory (*see* ECF No. 38-3 at 76-77), those claims are rooted in state law and do not warrant federal habeas relief. *See Barkley v. Ortiz*, 209 F. App'x 120, 124 (3d Cir. 2006) (rejecting claim based on the failure to charge accomplice liability which was rooted in violations of state law) (quoting 28 U.S.C. § 2254); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions.").

was beneficial to Petitioner who sought to convince the jury he was a liar. For these reasons, the Court denies relief on this claim.

### f. Admission of Autopsy Photographs (Ground 7)

In Ground Seven, Petitioner that the trial court's improper admission of autopsy photos deprived him of a fair trial. At trial, defense counsel objected to the admission of two autopsy photos, one of which showed Hosein's entire body and other of which showed red blood on a white sheet, as "gory." (ECF No. 37-1, Tr. at 93:16-94:9.) The trial court admitted the photos, finding that they were not repetitious and that "the probative value far outweighs any possible prejudice." (*Id.* at 95:19-22.) On direct appeal, Petitioner argued that trial court erred in admitting two autopsy photos over counsel's objection. (ECF No. 38-4, Appellate Brief at 35.) The Appellate Division found that this claim was without merit. (ECF No. 38-6 at 8.)

Petitioner's claim is not cognizable to the extent it relies on New Jersey evidence rules, *see Estelle*, 502 U.S. at 67–68, but "the Due Process Clause forbids the introduction of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair." *Andrew v. White*, 145 S. Ct. 75, 83 (2025) (citing *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). To prevail on a due process claim, petitioner "must prove that he was deprived of 'fundamental elements of fairness in [his] criminal trial.'" *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (alteration in original) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992)). To prevail, Petitioner "must tread a steep hill. The Supreme Court has 'defined the category of infractions that violate "fundamental fairness" very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)).

Here, Petitioner raises his claim as an evidentiary challenge and cannot show that the admission of the autopsy photographs was fundamentally unfair. Courts in this district have found that the admission of similar autopsy photos did not violate due process right to a fair trial. *See Breece v. Hendricks*, No. 02–cv–05547, 2005 WL 2897489, at *6 (D.N.J. Oct. 28, 2005) ("Admission of [autopsy photos depicting the head of the victim] did not deprive Petitioner of a fundamentally fair trial."); *Ingram v. Attorney General of State of New Jersey*, No. 17-cv-10740, 2025 WL 1743051, at *5 (D.N.J. Jun. 24, 2025) (finding that state court did not violate the petitioner's due process rights in admitting autopsy photos of the shooting victim). For these reasons, the Court denies relief on Petitioner's claim that the admission of autopsy photos denied him the right to a fair trial.

IV. **CONCLUSION**

For the reasons explained in this Opinion, the Court denies the Petition and also denies a certificate of appealability as reasonable jurists would not find the Court's assessment debatable. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate Order follows.

*s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States District Judge**

DATED: December 23, 2025.